**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Jose MONTALVO–LOPEZ,**
**Defendant–Appellant.**

**No. 05CA2090.**

Colorado Court of Appeals,
Div. III.

May 15, 2008.

Certiorari Granted Oct. 6, 2008.

John W. Suthers, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Mark G. Walta, Deputy State Public Defender, Natalie Chalabi, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Jose Montalvo–Lopez, appeals the judgment of conviction entered upon a jury verdict finding him guilty of one count of possession with intent to distribute cocaine, and he also appeals the sentence imposed upon a special offender finding that the cocaine weighed more than 1000 grams and that he introduced, distributed, or imported that substance into Colorado. We affirm.

A police officer pulled defendant over for a traffic offense. After the officer reviewed defendant's driver's license and vehicle registration and said good-bye, the officer asked if defendant was carrying drugs and requested to search the vehicle. Defendant consented to the search. The officer found a hidden compartment that held five kilograms of cocaine.

Defendant was charged with one count of possession with intent to distribute more than 1000 grams of a schedule II controlled substance; one special offender count, a sentence enhancer; and one count of conspiring to possess a controlled substance with intent to distribute.

After a jury trial, defendant was found guilty of the intent to distribute count and the special offender sentence enhancer. He was later sentenced as a special offender to sixteen years and one day in the Department of Corrections.

This appeal followed.

## I.

Defendant argues that the trial court erred in denying his motion to suppress evidence and statements obtained as a result of an unconstitutional search and seizure. Specifically, he alleges that the search was not consensual or, in the alternative, that there was not probable cause for the search. We disagree.

When reviewing a trial court's denial of a motion to suppress, we defer to its findings of fact, but review its conclusions of law de novo. *People v. Garcia,* 11 P.3d 449, 453 (Colo.2000); *People v. Romero,* 953 P.2d 550, 555 (Colo.1998).

Defendant relies on *People v. Brandon,* 140 P.3d 15 (Colo.App.2005). There, a division of this court found that a search was unreasonable because the officer did not have a basis to continue the detention beyond the traffic stop and because the consent given was not voluntary. *Id.* at 23.

Once the underlying basis for an initial traffic stop has concluded, it does not automatically follow that any further detention for questioning is unconstitutional.

Lengthening the detention for further questioning beyond that related to the initial stop is permissible if (1) the officer has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring; or (2) the initial detention has become a consensual encounter.

*Id.* at 19–20. In a consensual encounter, the individual voluntarily cooperates with the police and is free to leave at any time. *Outlaw v. People,* 17 P.3d 150, 155 (Colo.2001). The test is objective in nature, based on the factual circumstances surrounding the encounter. *Id.*

Here, the trial court found that the initial detention of the vehicle was a justified traffic stop and that the search was consensual. Specifically, as to the latter, the court found:

[A]fter [the officer] handed to [defendant] his driver's license and his registration and told him he was not issuing him a ticket and said good-bye, that—and [defendant] understood that and at least started toward his car, at that point, after [the officer] asked if he could—if he had any drugs or guns and if he could search, the encounter became a consensual encounter, and [defendant] voluntarily consented to a search of the car at that point.

The trial court further found that the officer asked defendant in two different ways in Spanish if he could search the car. The trial court also found that other factors that could justify a search, including a perfume odor, nervousness of the passenger, and a different colored panel on the dashboard covering the air bag, were not sufficient to justify this search absent consent.

The officer had returned the license and registration, had said good-bye, and had stated that he was not going to issue defendant a ticket, and only then, after defendant was walking away, did the officer ask if he could search the vehicle. These facts make this case distinguishable from *Brandon* and *People v. Haley,* 41 P.3d 666 (Colo.2001), upon which defendant relies.

Considering the circumstances surrounding the traffic stop, we conclude that there is evidence in the record to support the trial

court's findings, and we will not disturb them on appeal.

## II.

Defendant argues that the trial court erred in admitting irrelevant drug courier profile evidence and undisclosed statements made by a codefendant to federal investigators inculpating defendant in the charged crime. We disagree.

### A.

■ Because defendant contemporaneously objected to the profile evidence, we review for abuse of discretion. *People v. Gibbens*, 905 P.2d 604, 607 (Colo.1995). When reviewing a trial court's admission of evidence in light of the balancing test of CRE 403, an appellate court must assign to the evidence the maximum probative value and the minimum unfair prejudice that a reasonable fact finder might attribute thereto. *People v. Lowe*, 660 P.2d 1261, 1264 (Colo.1983), *abrogated on other grounds by Callis v. People*, 692 P.2d 1045 (Colo.1984). To overcome this presumption in favor of the trial court's ruling, the appellant must demonstrate that the decision was "manifestly arbitrary, unreasonable, or unfair." *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993).

Defendant relies on *Salcedo v. People*, 999 P.2d 833 (Colo.2000). "At its most basic level, *Salcedo* held, consistent with CRE 702, that drug courier profiles are inadmissible [as substantive evidence] because they are unreliable and thus not helpful to the trier of fact." *Masters v. People*, 58 P.3d 979, 993 (Colo.2002).

■ "A drug courier profile is an informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics." *People v. Gay*, 24 P.3d 624, 628 (Colo. App.2000). The *Gay* division distinguished *Salcedo*, concluding that testimony concerning how drug traffickers transport drugs into Colorado did not concern specific characteristics that are stereotypical of drug couriers themselves. *Id.* In *People v. Ramirez*, 1 P.3d 223 (Colo.App.1999), another division of this court held that a trial court acted within its discretion in admitting expert testimony informing the jurors of information they would not normally possess about the modus operandi of those who generally engage in drug trafficking. *Id.* at 227.

Here, the officer testified about the most common area of a vehicle in which drugs are concealed; that Interstate 70 is a corridor for transporting drugs from the West Coast; that Chicago is "the largest drug-hub" in the United States; that certain information from a person can tell him if the person is traveling for legitimate business purposes; and that salvaged vehicles are commonly used to transport drugs. This testimony is consistent with the testimony held admissible in *Gay*. It is testimony regarding how drugs are transported, not specific personal characteristics of drug couriers themselves. Further, it aided the jurors' understanding of an activity with which they were not likely to be familiar.

We conclude that there was no abuse of discretion by the trial court.

### B.

■ The resolution of discovery issues is generally committed to the sound discretion of the trial court, and its determinations will not be overturned absent an abuse of discretion or violation of the defendant's constitutional rights. *People v. Denton*, 91 P.3d 388, 391 (Colo.App.2003).

Here, defendant's passenger, who was a codefendant, gave a statement to the Drug Enforcement Administration (DEA) indicating that defendant, contrary to his theory of defense, knew that drugs were hidden in the vehicle. While the prosecutor advised defense counsel that a conversation had occurred between the codefendant and the DEA, no copy of the codefendant's statement was provided to defense counsel. The prosecution referred to this statement during the direct examination of the codefendant and used the statement to impeach the codefendant with a prior inconsistent statement. Defense counsel also asked an officer about the statement.

Several sections of Crim. P. 16(1)(I) potentially apply to defendant's argument. Crim. P. 16(1)(I)(a)(1)(I) states that a prosecutor

must make available to a defendant "[p]olice, arrest and crime or offense reports, including statements of all witnesses." Crim. P. 16(1)(I)(a)(1) (VIII) states that the prosecution must make available to a defendant "[a]ny written or recorded statements ... of a codefendant, and the substance of any oral statements made to the police or prosecution ... by a codefendant, if the trial is to be a joint one." Further, Crim. P. 16(1)(I)(c)(1) states that "[u]pon defense counsel's request and designation of material," the prosecution shall use diligent good faith efforts to make available to a defendant any information in possession of other governmental agencies.

Here, the statement was made to a DEA agent; defendant was not tried jointly with the codefendant, who had previously pleaded guilty and had been sentenced prior to defendant's trial; and defendant knew about the statement but failed to request it. *See* Crim. P. 16(1)(I)(c)(1).

Even if we assume, without deciding, that Crim. P. 16(1)(I)(a)(1)(I) imposes a duty to disclose witness statements given to another governmental authority, any error in not disclosing the statement was harmless because defendant knew of the statement and its contents but failed to request it.

### III.

Defendant argues that there was not sufficient evidence to convict. Specifically, he argues that there was no evidence that he was importing cocaine into Colorado, or that he intended to distribute it in the state. Defendant claims, instead, that the evidence, viewed in a light most favorable to the prosecution, establishes that he was merely passing through Colorado en route to Chicago.

"When the sufficiency of the evidence is challenged on appeal, the reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt." *People v. McIntier*, 134 P.3d 467, 471 (Colo.App. 2005) (citing *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999); *Kogan v. People*, 756 P.2d 945, 950 (Colo.1988)). The prosecution is

given the benefit of every reasonable inference that could be drawn from the evidence. *Id.* Determinations of witness credibility, as well as the weight given to the evidence, lie with the finder of fact. *Id.* Also, the fact finder must resolve issues of inconsistency as to testimony and other evidence. *Id.* An appellate court cannot sit as a thirteenth juror and set aside a verdict because it could have reached a different conclusion. *Id.* at 471–72.

Section 18–18–407, C.R.S.2007, provides:

(1) Upon a felony conviction under this part 4, the presence of any one or more of the following extraordinary aggravating circumstances designating the defendant a special offender shall require the court to sentence the defendant to the department of corrections for a term of at least the minimum term of years within the presumptive range for a class 2 felony but not more than twice the maximum term of years within the presumptive range for a class 2 felony:

...

(d) The defendant unlawfully introduced, distributed, or imported into the state of Colorado any schedule I or II controlled substance....

It is not disputed that defendant transported cocaine into Colorado, an act that constitutes importation. To import is "to bring from a foreign or external source." *Webster's Third New International Dictionary* 1135 (2002). Defendant brought the substance, cocaine, "from a foreign or external source" into Colorado while traveling through Colorado. It is not necessary that he intend to distribute the controlled substance in Colorado. Because the statute uses the disjunctive "or," he need not have intended both the importation and distribution in Colorado. The fact that he was in transit is not material to the issue.

### IV.

Defendant argues that the trial court erred in admitting evidence of the codefendant's guilty plea and that the prosecution improperly referred to it in closing argument. We conclude there is no plain error.

### A.

 Here, defendant did not object to the testimony. Therefore, we review for plain error. A plain error standard of review is applied when a party fails to make a timely objection. *People v. Miller*, 113 P.3d 743, 749 (Colo.2005). Plain error is error that is so clear cut and so obvious that a competent trial court should be able to avoid it without benefit of objection, and it must affect a substantial right of the defendant. *See United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). Plain error requires reversal only if a review of the entire record justifies a conclusion that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003).

 The guilty plea or conviction of a codefendant may not be used as substantive evidence of another's guilt. *Paine v. People*, 106 Colo. 258, 261–62, 103 P.2d 686, 688 (1940). If the accomplice testifies, evidence of the accomplice's guilty plea, however, may be admissible for other purposes. Such evidence may be used to show acknowledgment by the accomplice of participation in the offense. *United States v. Davis*, 766 F.2d 1452, 1456 (10th Cir.1985). Further, evidence of an accomplice's plea agreement is relevant to impeach the credibility of the accomplice. *See People v. Pate*, 625 P.2d 369, 370 (Colo.1981).

 Here the codefendant ultimately testified in the prosecution's case-in-chief and admitted the conviction. A witness may be impeached by a prior conviction. § 13–90–101, C.R.S.2007. Because the codefendant testified and admitted the conviction, we cannot say that it was error, much less plain error, for the testimony to be admitted.

### B.

Defendant also contends that the trial court erred in not giving the jury a limiting instruction on how it could consider the codefendant's plea. Because there was no request for a limiting instruction, our review is for plain error.

Defendant's failure to request a limiting instruction or offer one does not, then, place that duty on the trial court to give one sua sponte. *People v. Scheidt*, 182 Colo. 374, 382, 513 P.2d 446, 451 (1973). Therefore, we conclude that it was not plain error for the trial court to omit a limiting instruction regarding the codefendant's plea.

### C.

 "Closing arguments are limited to the facts and the inferences therefrom, which have been proved at trial." *People v. Hernandez*, 829 P.2d 394, 397 (Colo.App. 1991). Because defendant did not object to the closing argument during trial, we review for plain error. *Id.* "Under this standard of review, the prosecutor's remark must be 'particularly egregious' to warrant a new trial." *Id.* at 396 (quoting *People v. Diefenderfer*, 784 P.2d 741, 755 (Colo.1989)).

 "Whether closing argument is improper depends upon the nature of the comments and on whether the jury's attention has been directed to something it is not entitled to consider." *People v. Perea*, 126 P.3d 241, 247 (Colo.App.2005) (citing *People v. Constant*, 645 P.2d 843, 846 (Colo.1982)). "Counsel may comment on the evidence admitted at trial, the reasonable inferences that can be drawn therefrom, and the instructions of law given to the jury." *Id.* (citing *People v. DeHerrera*, 697 P.2d 734, 743 (Colo.1985)). "Counsel may also point to the circumstances that raise questions about or cast doubt on a witness's testimony, and counsel may draw reasonable inferences from the evidence as to the credibility of the witnesses." *Id.* (citing *Wilson v. People*, 743 P.2d 415, 418 (Colo. 1987)).

Here, the prosecutor referred to the codefendant's plea multiple times in his closing. It appears from the transcript that the prosecution was attempting to bolster the codefendant's credibility. These statements were not so egregious as to warrant a new trial. Also, the prosecution said that the codefendant's plea "doesn't mean anything with respect to this defendant." Therefore, we find no plain error.

## V.

■ Finally, defendant argues that he was improperly sentenced because the trial court erred in determining that the minimum sentence it could impose was sixteen years. We disagree.

■ The determination of the correct sentencing range is a question of law that we review de novo. *People v. Coleman,* 55 P.3d 817, 821–23 (Colo.App.2002). There are two sentencing regimens that are potentially applicable to defendant's circumstances, but one provides that the statute imposing the greater sentence applies.

### A. Regimen I

Defendant was convicted of possession with intent to distribute 1000 grams of a schedule II controlled substance under sections 18–18–405(1)(a), (2)(a)(I)(A), and (3)(a)(III), C.R.S.2007, and was found to be a special offender under section 18–18–407(1)(d). A special offender is one who "unlawfully introduced, distributed, or imported into the state of Colorado any schedule I or II controlled substance." § 18–18–407(1)(d). The sentencing range for a special offender is "at least the minimum term of years within the presumptive range for a class 2 felony but not more than twice the maximum term of years within the presumptive range for a class 2 felony." § 18–18–407(1). The presumptive sentencing range for a class 2 felony is eight to twenty-four years. § 18–1.3–401(1)(a)(V)(A), C.R.S.2007. Therefore, defendant's sentencing range under this regimen was eight to forty-eight years.

### B. Regimen II

Defendant's violation occurred on August 26, 2004. At the time of the offense, section 18–18–405, as pertinent here, provided, as it does now:

(1) (a) [With exceptions not pertinent here] it is unlawful for any person knowingly to ... possess, or to possess with intent to ... distribute a controlled substance....

(2)(a) [With exceptions not pertinent here] ... any person who violates any of the provisions of subsection (1) of this section:

(I) In the case of a controlled substance listed in schedule I or II of part 2 of this article, commits:

(A) A class 3 felony; except that a person commits a class 4 felony if such violation is based on the possession of a controlled substance listed in schedule II unless otherwise provided in paragraph (a) of subsection (3) of this section....

. . . .

(3) (a) *Unless a greater sentence is required pursuant to the provisions of another statute,* any person convicted pursuant to subparagraph (I) of paragraph (a) of subsection (2) of this section for knowingly ... possessing, or possessing with intent to ... distribute ... an amount that is or has been represented to be:

. . .

(III) One thousand grams or one kilogram or more of any material, compound, mixture, or preparation that contains a schedule I or schedule II controlled substance as listed in section 18–18–203 or 18–18–204 shall be sentenced to the department of corrections for a term greater than the maximum presumptive range but not more than twice the maximum presumptive range provided for such offense in section 18–1.3–401(1)(a) with regard to offenses other than manufacturing, dispensing, selling, distributing, or possessing with intent to manufacture, dispense, sell, or distribute, *and for a term greater than the maximum presumptive range but not more than twice the maximum presumptive range provided for such offense in section 18–1.3–401(1)(a) as modified pursuant to section 18–1.3–401(10) with regard to manufacturing, dispensing, selling, distributing, or possessing with intent to manufacture, dispense, sell, or distribute.*

(Emphasis added.)

Section 18–1.3–401(10) provided, as it does currently, in pertinent part, as follows:

(a) The general assembly hereby finds that certain crimes which are listed in paragraph

(b) of this subsection (10) present an extraordinary risk of harm to society and therefore, in the interest of public safety, for such crimes which constitute class 3 felonies, the maximum sentence in the presumptive range shall be increased by four years. . . .

(b) Crimes that present an extraordinary risk of harm to society shall include the following:

. . .

(XI) Unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell [or] distribute . . . as defined in section 18–18–405. . . .

Pursuant to sections 18–1.3–401 and 18–18–405, and as applied here, possession of a schedule II controlled substance with intent to distribute is a class three felony. A class three felony has a presumptive sentencing range of four to twelve years. § 18–1.3–401(1)(a)(V)(A). As an extraordinary risk offense, the presumptive range becomes four to sixteen years. § 18–1.3–401(10). Applying section 18–18–405(3)(a)(III), which imposes as a minimum "a term greater than the maximum presumptive range but not more than twice the maximum presumptive range provided for such offense in section 18–1.3–401(1)(a)"—the minimum sentence under this regimen becomes sixteen years and one day, the sentence imposed here.

Defendant argues that we should follow *Coleman,* in which the division held that the defendant should have been sentenced under the regimen of section 18–18–407(1)(d), resulting in a minimum sentence of eight years. 55 P.3d at 822–23. When *Coleman* was decided, however, the relevant version of section 18–18–405(3)(a) provided, "[e]xcept as otherwise provided in section 18–18–407 relating to special offenders. . . ." Ch. 264, sec. 9, § 18–18–405(3)(a), 1997 Colo. Sess. Laws 1542. In contrast, the current version, which is applicable here, provides, "[u]nless a greater sentence is required pursuant to the provisions of another statute. . . ." Ch. 199, sec. 2, § 18–18–405(3)(a), 2003 Colo. Sess. Laws 1424 (effective Apr. 29, 2003). The change in statutory language makes all the difference,

and, thus, the result reached in *Coleman* no longer pertains.

Here, the special offender sentence is greater under section 18–18–405 (Regimen II) than under section 18–18–407 (Regimen I), and section 18–18–405(3)(a) requires that the regimen producing the greater sentence apply. Therefore, the trial court correctly found that the minimum sentence was sixteen years and one day. Judgment and sentence are affirmed.

Judge TAUBMAN and Judge TERRY concur.